[No. G024274. Fourth Dist., Div. Three. May 14, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE RAUL DURAN, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\***

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts V-VII.

**COUNSEL**

Ivy S. Kessel, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Lora Fox Martin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Jesse Raul Duran, Jr., appeals from a judgment sending him to prison for life plus 17 years.[1] We reverse his carjacking conviction because, as the Attorney General concedes, it was a necessarily included offense within the kidnapping-for-carjacking charge.[2] Duran contends the evidence is insufficient to support the remaining convictions of kidnapping for carjacking, simple kidnapping, robbery, attempted robbery, and a single count of street terrorism. Duran also argues that the trial court erred when it failed to instruct the jury sua sponte on lesser included offenses. We affirm the judgment as to all counts, excepting the single charge for simple carjacking.

I

### FACTS

On August 2, 1997, Duran entered a Laguna Hills drugstore, covered half his face, pulled a gun, and ordered two employees to empty the cash registers. Duran left the store with approximately $535 in cash. He then went to a Westminster grocery store where he again covered his face, pulled the gun on the employees and ordered them to empty the registers. The second robbery was foiled when the police were called before Duran got any money.

Duran left the grocery store in a convertible black Mustang which entered the 405 Freeway and headed north at approximately 100 miles an hour. The car skidded out of control, flipped over, and came to a crash on the side of the freeway. Duran was severely injured, but managed to walk to a freeway call box where he came upon Christopher Beardsley, who had seen the accident and had pulled off the freeway to call for help.

Duran pulled the gun on Beardsley, forcing him back into his car and ordering him to drive him away from the scene. Unfortunately, Beardsley was not alone in the car: his wife, Kristen, was in the front seat and their infant son, Jake, was sitting in the back. Duran entered the backseat of the car, pointed the gun at the baby's head, and threatened to kill them all unless Beardsley drove him to where he wanted to go. Duran forced Beardsley to

---

[1] Two concurrent life sentences were ordered for the kidnapping-related charges, with an additional 17 years for using a gun during the kidnapping and the robbery. All other terms were ordered to be served concurrently.

[2] See Penal Code section 209.5, subdivision (a), which provides any "person who, during the commission of a carjacking and in order to facilitate the commission of a carjacking, kidnaps another person . . . shall be punished by imprisonment in the state prison for life . . . ." All further section references are to the Penal Code.

drive around for about 20 minutes until he asked to be dropped off in Westminster. The Beardsleys drove away and called the police.

Before going to a hospital, Duran returned to his gang's territory in the City of Norwalk. Duran had admitted on prior encounters with Kenneth Perry, a gang-unit officer with the Los Angeles County Sheriff's Department (LACSD), that he was an active member of Varrio Norwalk, the largest criminal street gang in the City of Norwalk. Duran's gang was well known to police as having engaged in a pattern of criminal activity, including crimes such as murder and kidnapping. Only a few months before, fellow gang member, Robert Munoz, had been sent to state prison following his convictions on similar robbery and carjacking charges.

## DISCUSSION

## II

### Sufficiency of Evidence

For any attack on the sufficiency of the evidence, we are necessarily limited by the substantial evidence rule. That is, we are required to review the evidence in the light most favorable to the verdict, reach all reasonable inferences and deductions presented by the evidence, and resolve all conflicts in favor of the judgment. (Cf. *People v. Sanchez* (1995) 12 Cal.4th 1, 31-32 [47 Cal.Rptr.2d 843, 906 P.2d 1129]; *People v. Carpenter* (1997) 15 Cal.4th 312, 387 [63 Cal.Rptr.2d 1, 935 P.2d 708].)

## III

### Kidnapping for Carjacking

Duran contends that all three convictions for kidnapping during a carjacking should be overturned because he never succeeded in getting the car away from its owner. Carjacking requires a felonious taking of a motor vehicle. (§ 215, subd. (a).) Because the Beardsleys remained in the car during the entire episode, Duran alleges no "taking" occurred under the meaning of the statute. Thus, he should have been prosecuted only for simple kidnapping, which carries a lower sentence. We disagree.

The ultimate question here is whether a felonious taking can occur under the carjacking statute when the victim remains with the car. It appears to be

one of first impression in California.[3] " 'Carjacking' is the *felonious taking* of a motor vehicle in the possession of another, from his or her person or in the immediate presence . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by force or fear." (§ 215, subd. (a), italics added.) ■ The law was passed in 1993 to address what was then an increasingly dangerous problem of people being abducted from their cars, sometimes at gunpoint. (See *People v. Alvarado* (1999) 76 Cal.App.4th 156, 160 [90 Cal.Rptr.2d 129].)

Before 1993, the crime was charged as a robbery. However, the robbery statutes presented unique evidentiary hurdles because carjackers typically did not intend to *permanently* dispossess owners of their cars, a requirement for a robbery. " 'Under [then] current law there [was] no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense . . . .' " (*People v. Medina* (1995) 39 Cal.App.4th 643, 648 [46 Cal.Rptr.2d 112], quoting Assem. Com. on Pub. Safety, analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.)

■ Although the question is one of first impression in California, we find it persuasive that other jurisdictions have affirmatively ruled that a "taking" can occur when the victim remains with the car under other similar carjacking statutes. (See *U.S. v. DeLaCorte* (9th Cir. 1997) 113 F.3d 154 [upholding a federal carjacking conviction when the victim was not forced to leave the vehicle]; see also *People v. Green* (1998) 228 Mich.App. 684 [580 N.W.2d 444] [finding sufficient evidence to sustain a carjacking conviction under Michigan law even though the victims were not physically removed from the car].) Additionally, we are substantially aided by the rationale found in *People v. Alvarado, supra,* 76 Cal.App.4th 156.

In *Alvarado*, the defendant told the victim to get out of his car or he would be shot. Instead of complying, the victim parked the car, yanked the keys out of the ignition, and ran. (*People v. Alvarado, supra,* 76 Cal.App.4th at p. 158.) Although Alvarado was unable to drive the car without the keys, his conviction for carjacking was upheld. (*Id.* at p. 162.) The court reviewed the legislative history of the carjacking statute and determined that, because the

---

[3]There are other published California cases of carjackings involving victims who remained in the car, but these cases never addressed the issue. (See, e.g., *People v. Gray* (1998) 66 Cal.App.4th 973 [78 Cal.Rptr.2d 191] [upholding the constitutionality of the carjacking statute on a void-for-vagueness challenge]; *People v. Foster* (1995) 34 Cal.App.4th 766 [40 Cal.Rptr.2d 633] [upholding a carjacking conviction on an unrelated instructional issue]; *People v. Green* (1996) 50 Cal.App.4th 1076 [58 Cal.Rptr.2d 259] [holding that a carjacking is not a lesser included offense within robbery].)

law was passed to fill gaps in the robbery statutes, the Legislature had intended to treat the elements of carjacking essentially the same as the elements for robbery. (See *People v. Alvarado, supra*, 76 Cal.App.4th at p. 160.)

"There is no indication that the Legislature intended to alter the meaning of a felonious taking. [¶] Because the crimes of carjacking and robbery contain the same felonious taking requirement, we find it appropriate to apply to the crime of carjacking the well-developed law applicable to that element of robbery." (*People v. Alvarado, supra*, 76 Cal.App.4th at p. 160.) "For robbery, a felonious taking requires both a taking . . . and a carrying away . . . ." (*Id.* at p. 161, citing *People v. Hill* (1998) 17 Cal.4th 800, 852 [72 Cal.Rptr.2d 656, 952 P.2d 673].) " '*A taking occurs when the offender secures dominion over the property*, while a carrying away requires some slight movement of the property.' " (*People v. Alvarado, supra*, 76 Cal.App.4th at p. 161, quoting 2 LaFave & Scott, Substantive Criminal Law (1986) Larceny—Taking & Carrying Away, § 8.3, p. 345, italics added.) The court held that a "reasonable fact finder could find that a taking occurred *when defendant exercised dominion and control over the car* by ordering [the victim] to stop the car and to get out; [the victim's] response in braking the car and running away from it provides the asportation element of the completed crime." (76 Cal.App.4th at p. 161, italics added.)

Here, we adopt the sound reasoning of *Alvarado* and similarly hold that the Legislature intended that the well-established robbery definition of dominion and control be applied to the new crime of carjacking. When Duran entered the car he threatened to kill the entire family if Beardsley did not take him where he wanted to go. As Beardsley drove the car, Duran told him at gunpoint when to speed up and slow down, when to get on the freeway and when to get off, as well as where and when to turn. A taking occurred when Duran imposed his dominion and control over the car by ordering Beardsley to drive; Beardsley's response in driving the car where Duran directed him provided the asportation element of the completed crime.

There was sufficient evidence on which the jury could find that a felonious taking had taken place under the carjacking statute. We therefore affirm Duran's three convictions of kidnapping for carjacking.

## IV

### Crimes Against the Child

Duran contends that the kidnapping and the kidnapping-for-carjacking convictions as to Jake Beardsley must be reversed because the victim

was an infant incapable of exercising free will. Therefore, the elements of the crimes were not proven. We disagree.

An essential element of kidnapping is that the will of the victim be overcome by the use of force or by any other means. (See § 207.) An issue arises when young children are victims because they lack the mental capacity to consent to, or oppose, the taking of their person. "If a person's free will was not overborne by the use of force or threat of force, there was no kidnapping." (*People v. Moya* (1992) 4 Cal.App.4th 912, 916 [6 Cal.Rptr.2d 323].)

The issue was resolved by *People v. Oliver* (1961) 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593], in which the Supreme Court created an exception to the "free will" element in cases where the victim of the kidnapping is a young child. In those cases, the prosecution need only establish that the taking and carrying away was done for an illegal purpose or with an illegal intent. (See *People v. Oliver, supra,* 55 Cal.2d 761 [two year old willingly went into an alley with a child molester].)[4] In creating the new exception, the court said: " ' "All laws should receive a sensible construction. General terms should be so limited in their application as to not to lead to . . . an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character." ' " (*Oliver, supra,* 55 Cal.2d at p. 767.)

Duran urges this court to significantly narrow the *Oliver* holding by requiring the prosecution to make an additional showing that the illegal intent was specifically directed at the child. If we were to adopt this construction of the statute, it would lead to an absurd consequence. We reject that approach and necessarily follow the lead of our Supreme Court, which was recently given the same opportunity and declined. (See *People v. Hill* (2000) 23 Cal.4th 853 [98 Cal.Rptr.2d 254, 3 P.3d 898].)[5]

In *Hill,* a seven-month-old baby and her mother were abducted in a car and transported to a location where the defendant and his accomplice forced the mother to perform sexual acts. The accomplice threatened to shoot the baby if the mother did not cooperate. (*People v. Hill, supra,* 23 Cal.4th at

---

[4]The *Oliver* holding is now applied broadly to include any kidnap victim who is incapable of giving consent, such as children or the mentally incompetent. (See Use Note to CALJIC No. 9.50 (6th ed. 1996) p. 650.)

[5]*Hill* was cited extensively by both sides in their appellate briefs, but at the time of the briefing the case had only received intermediate appellate review. The Supreme Court essentially concurred with the position of the Attorney General and removed the legal basis of Duran's arguments.

pp. 855, 858.) Hill was convicted of kidnapping and carjacking. (*Id.*, at p. 855.) He argued that the Supreme Court should overturn his kidnapping conviction because "his illegal intent was directed at the mother, not the child." (*Id.* at p. 858.) The Supreme Court disagreed and adopted the appellate court's language: " 'Even if we assume the movement of [the child] might not have been a means to commit a crime directly against *her*, it was, however, carried out as the direct result of the *intent to commit a crime* and, within the reasoning of *Oliver*, renders [defendant] liable for [the baby's] kidnapping . . . .' " (*Ibid.*, second italics added.)

Just as in *Hill*, Duran argues that he did not harbor an illegal intent towards the child. Nonsense: He pointed a gun at the baby's head. Moreover, there was substantial evidence from which a jury could find that Duran had *an intent to commit a crime* when he entered the Beardsley's car: namely, a carjacking in order to continue his escape from the attempted robbery. The conviction for kidnapping is amply supported.

In *Hill*, the Supreme Court also interpreted the carjacking statute (§ 215, subd. (a)), a necessarily included offense within a kidnapping-for-carjacking charge. (See *People v. Contreras* (1997) 55 Cal.App.4th 760 [64 Cal.Rptr.2d 233].) The court expanded the holding from the *Oliver* kidnapping case: "A similar rule should apply to carjacking, except that there need be no separate requirement of an illegal purpose. Unlike kidnapping, if the remaining elements of carjacking are present, an illegal purpose will always exist . . . . Accordingly, for carjacking, a taking will be considered against the 'will' of an infant if it is without lawful consent." (*People v. Hill, supra*, 23 Cal.4th at p. 860.)

*Hill* is entirely dispositive on the issue. Mr. and Mrs. Beardsley testified at trial about their abduction at gunpoint and identified Duran in court. There was substantial evidence that the taking of the car was without their consent, and, therefore, we affirm the kidnapping conviction of Jake Beardsley for the purpose of carjacking.

V-VII*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1371.

## VIII

### DISPOSITION

We reverse the conviction for the single charge of simple carjacking. Once that count is stricken, the judgment is otherwise affirmed.

Rylaarsdam, J., and Bedsworth, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 22, 2001.