132 Cal.Rptr.2d 135 (2003)
107 Cal.App.4th 368
In re TRAVIS W., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Travis W., Defendant and Appellant.
No. A097596.
Court of Appeal, First District, Division Four.
March 25, 2003.
Review Denied June 18, 2003.
Certiorari Denied November 10, 2003.
*136 A. Charles Dell'Ario, for Appellant.
Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Laurence K. Sullivan, Supervising Deputy Attorney General, for Respondent.
Certiorari Denied November 10, 2003. See 124 S.Ct. 548.
KAY, P.J.
What started as a drug buy ended as a carjacking. An adult held a gun on the owner and demanded the keys to the car while Travis W. and another person forced the owner to his knees. When the owner produced the keys, it was Travis who took them. Travis himself never held the gun. The primary issue presented by this timely appeal is whether the juvenile court was correct in concluding that what Travis did constituted "[c]arjacking ... while armed with a dangerous or deadly weapon" within the meaning of Welfare and Institutions *137 Code section 707, subdivision (b)(25),[1] which was the basis of Travis's commitment to the California Youth Authority for a period not to exceed ten years.
The offense for which defendant was committed is described in subdivision (b)(25) as follows: "Carjacking, as described in Section 215 of the Penal Code, while armed with a dangerous or deadly weapon." The issue before us is whether "armed" means that the minor must be personally armed with a dangerous or deadly weapon when the offense was committed, or whether it applies to principals to the offense who were not personally wielding the weapon.
We begin by examining the words of the statute; if the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs. If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. In such situations, we strive to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statute's general purposes. We also try to avoid any interpretation that would lead to absurd consequences. (E.g., People v. Walker (2002) 29 Cal.4th 577, 581, 128 Cal.Rptr.2d 75, 59 P.3d 150; People v. Coronado (1995) 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.)
Viewed in isolation, the language of subdivision (b)(25) does not dispel all doubt as to its meaning. It lacks the unambiguous clarity of various provisions specifying penal consequences for someone who is either "personally armed" (Pen.Code, §§ 666.7, subds.(b)(6), (i)(2), 1203.06, subd. (a)(2), 12022, subds. (c), (d)) or who "personally us[es]" a weapon in the commission of a crime (e.g., Pen.Code, §§ 666.7, subds.(a)(13), (b)(5), 1192.7, subd. (c)(8), 1319.5, subd. (b)(F), 12022, subd. (b), 12022.5, subd. (a)). Numerous statutes use the word "armed" in describing forbidden conduct (e.g., Pen.Code, §§ 666.7, subds.(a)(12), (c)(2), (h)(8), (j)(l), 12022, subd. (a)(1), 12022.2, subd. (a), 12022.3, subd. (b)).[2] Defendant bases his contention upon one such statute.
The current version of Penal Code section 1203 directs that probation shall not be granted to any person who is convicted of a specified offenseincluding carjackingand who "was armed ... with a deadly weapon, other than a firearm" at the time the offense was committed. (Pen. Code, § 1203, subd. (e)(1).) This provision has been construed to require that the defendant have personal control of the deadly weapon. The prohibition against probation does not apply if it was not the defendant, but an accomplice, who was armed. In short, at least for purposes of probation ineligibility, one could not be derivatively or vicariously armed. Courts reached this conclusion after examining the statute's language and finding no indication that the Legislature intended the *138 more expansive liability. (See People v. Alvarez (2002) 95 Cal.App.4th 403, 406-409, 115 Cal.Rptr.2d 515 and authorities cited.) Travis contends that analysis of the language of section 707, subdivision (b)(25) will compel this court to reach the same construction.
Travis's statutory argument is not implausible. Courts of Appeal have come to differing conclusions as to whether enhancement statutes not containing the words "personal" or "personally" cover vicarious use; a decisive factor is whether there is any legislative direction that the statute is to be applied to persons who do not themselves commit the prohibited act.[3] For the reasons that follow, we reject Travis's contention that subdivision (b)(25) must be construed to be inapplicable to a principal who is not personally armed.
Both parties cite In re Christopher R. (1993) 6 Cal.4th 86, 23 Cal.Rptr.2d 786, 859 P.2d 1301. The issue considered there by the Supreme Court was whether the offense of "[r]obbery while armed with a dangerous or deadly weapon" designated by subdivision (b)(3) of section 707 covered only instances where the perpetrator was personally armed. The Court concluded the statute's reach was broad enough to cover vicarious arming because the courts had held that the same language "person being armed with a dangerous or deadly weapon" contained in the pre-existing robbery statute, included persons vicariously armed. "It was in 1976 that the Legislature added subdivision (b), including subdivision (b)(3), to section 707. [Citation.] [¶] In 1976, former section 211a of the Penal Code stated: `All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, and the robbery of any person who is performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire, is robbery in the first degree. All other kinds of robbery are of the second degree.' [Citation.] It covered `vicarious' as well as `personal' arming. [Citations.] [11] In view of the foregoing, we answer the question stated above thus: By specifying the criminal offense of `[r]obbery while armed with a dangerous or deadly weapon' in subdivision (b)(3) of section 707, the Legislature referred to the felony described in former section 211a of the Penal Code." (In re Christopher R., supra, at pp. 92-93, 23 Cal.Rptr.2d 786, 859 P.2d 1301, fn. omitted.)
Travis argues that the underlying basis for the decision in Christopher R. is absent here. In the case of carjacking, subdivision (b)(25) was added to section 707 at the same time that the Legislature created the substantive crime. (See Stats.1993, ch. 611, § 6, p. 3508 [adding Pen.Code, § 215], § 34, pp. 3585-3587 [adding subd. (b)(25].) Thus, unlike the phrase "robbery while armed," there could be no existing judicial construction of the words "carjacking while armed" that the Legislature could be deemed to have taken into account with *139 the enactment of subdivision (b)(25). We agree with this portion of appellant's analysis. Assuming that Christopher R. is not conclusive in our situation, we turn now to an analysis of the essential nature of carjacking.
Carjacking is defined as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (Pen.Code, § 215, subd. (a).) Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) The similarities between the definition of carjacking and the definition of robbery are apparent at once. Both involve "the felonious taking" of property that is "in the possession of another" person. Both require that the taking be from the "person or immediate presence" of the person. Both are "accomplished by means of force or fear." True, there are differences. Robbery can involve any type of personal property, while carjacking deals with a single form of property. Also, robbery requires an intent to permanently deprive the victim of possession of the property, while carjacking can be committed with the intent of temporary dispossession. By virtue of these differences, neither carjacking nor robbery is a necessarily included offense of the other. (People v. Green (1996) 50 Cal. App.4th 1076, 1083-1084, 58 Cal.Rptr.2d 259; People v. Dominguez (1995) 38 Cal. App.4th 410, 418-419, 45 Cal.Rptr.2d 153.) Nevertheless, there is an undeniable measure of overlap between robbery and carjacking.
It has been long and widely recognized by courts that the essence of robbery is the fear of the victim yielding to real or threatened coercion. (E.g., Todd v. State (Alaska (1996) 917 P.2d 674, 681; Goodwine v. State (Wyo.1988) 764 P.2d 680, 683; State v. Fulks and Feurt (1934) 114 W.Va. 785, 788, 173 S.E. 888, 889; State v. DiBattista (1930) 110 Conn. 549, 558, 148 A. 664, 667; People v. Bodkin (1922) 304 Ill. 124, 127-128, 136 N.E. 494, 495; State v. Redmond (1922) 122 Wash. 392, 393, 210 P. 772; State v. Luhano (1909) 31 Nev. 278, 284, 102 P. 260, 262; State v. Perley (1894) 86 Me. 427, 432, 30 A. 74, 76; State v. Burke (1875) 73 N.C. 83, 86; James v. State (1875) 53 Ala. 380, 387; Long v. State (1852) 12 Ga. 293, 321.) The most common form of the coercion is physical harm from violence. Death is always a possibility. (See People v. Alvarado (1990) 224 Cal.App.3d 1165, 1168, 274 Cal. Rptr. 452; People v. Pendleton (1985) 167 Cal.App.3d 413, 418, 212 Cal.Rptr. 524.) The defining features of robbery are (1) the taking of property, (2) from a person, (3) accomplished by force or fear. (E.g., People v. Butler (1967) 65 Cal.2d 569, 572-573, 55 Cal.Rptr. 511, 421 P.2d 703; In re Albert A. (1996) 47 Cal.App.4th 1004, 1007, 55 Cal.Rptr.2d 217; People v. Mungia (1991) 234 Cal.App.3d 1703, 1707, 286 Cal. Rptr. 394; 4 Blackstone's Commentaries 241-242; 2 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Crimes Against Property, § 86, p. 115.) A comparison of the statutory language demonstrates that all of these features are also elements of the offense of carjacking. The legislative history of the carjacking statute leaves no doubt that the new offense of carjacking is a direct offshoot of the crime of robbery.
The author of the bill which created the new offense explained why it was needed: *140 "`[T]here has been considerable increase in the number of persons who have been abducted, many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. [¶] This relatively "new" crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, it would be simpler to hot-wire the automobile without running the risk of confronting the driver. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally, law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing. [¶] Under current law there is no carjacking per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since [many] of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime.' (Assem. Com. on Pub. Safety analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.)" (People v. Medina (1995) 39 Cal.App.4th 643, 647-648, 46 Cal.Rptr.2d 112.)
It is clear from this source that before it was made a separate offense, carjacking was prosecuted as a form of robbery. (See People v. Duran (2001) 88 Cal.App.4th 1371, 1376, 106 Cal.Rptr.2d 812; People v. Hamilton (1995) 40 Cal. App.4th 1137, 1141-1142, 47 Cal.Rptr.2d 343.) The comments of the bill's author demonstrate that the commonalities between the two crimes go beyond their respective elements. The perpetrator's intentwhether intending permanent or temporary dispossessionis not the essence of the offenses. But how that transfer of possession is accomplished is essential. The author of the bill makes it clear that, as it is with robbery, the threat of force is implicit in carjacking. Both involve confrontation between the perpetrator and the rightful owner. The confrontation entails great fear, serious injury, and even death. Violence and the use of firearms are not uncommon.
It is equally plain that the overlap between robbery and carjacking were expressly recognized by the Legislature when it made carjacking a crime. The statute making carjacking a crime also provides: "This section shall not be construed to supersede or affect [Penal Code] Section 211. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211." (Pen.Code § 215, subd. (c), added by Stats. 1993, ch. 611, § 6, p. 3508.) Concerning this provision our Supreme Court stated: "There would be no need for the Legislature to preclude multiple punishment for carjacking and robbery unless a defendant could be convicted of both carjacking and robbery based upon the same conduct. Subdivision (c) of [Penal Code] section 215, therefore, constitutes an expression of legislative intent permitting multiple convictions of carjacking and robbery based upon the same conduct." (People v. Ortega (1998) 19 Cal.4th 686, 700, 80 Cal. Rptr.2d 489, 968 P.2d 48.) These are unmistakable expressions from both the Legislature and our highest court that a carjacking can also be a robbery and thus within the statutory prohibition against double punishment for "[a]n act ... that is punishable in different ways by different provisions" (Pen.Code, § 654).
The commonalities between carjacking and robbery have also been recognized by numerous Courts of Appeal. One, noting that "carjacking is very closely related to robbery," held that carjacking, like robbery, *141 can have multiple victims who do not have to be the owners of the property taken. (People v. Hamilton, supra, 40 Cal.App.4th 1137, 1142-1144, 47 Cal. Rptr.2d 343.) The court concluded that "[i]n the usual case of carjacking involving multiple occupants, all are subjected to a threat of violence, all are exposed to the high level of risk which concerned the Legislature, and all are compelled to surrender their places in the vehicle and suffer a loss of transportation. All are properly deemed victims of the carjacking." (Id. at p. 1144, 47 Cal.Rptr.2d 343, fn. omitted.) This latter statement has become the standard description of why carjacking was made a crime. (See People v. Hill (2000) 23 Cal.4th 853, 859, 98 Cal.Rptr.2d 254, 3 P.3d 898; People v. Alvarado (1999) 76 Cal.App.4th 156, 160, 90 Cal.Rptr.2d 129.) Another court, noting that "the elements and statutory language of carjacking are analogous to those of robbery," adopted another principle of robberythat the force or fear may be exerted after the perpetrator has gained possession of the propertyand applied it to carjacking. (People v. O'Neil (1997) 56 Cal.App.4th 1126, 1131, 66 Cal.Rptr.2d 72.) Three Courts of Appeal have held that, like robbery, carjacking is complete when the perpetrator obtains dominion over the property, even if the owner still has some measure of nominal control. (People v. Duran, supra, 88 Cal.App.4th 1371, 1377, 106 Cal.Rptr.2d 812; People v. Gray (1998) 66 Cal.App.4th 973, 984-985, 78 Cal. Rptr.2d 191; People v. Alvarado, supra, at pp. 160-161, 274 Cal.Rptr. 452.) Three Courts of Appeal have construed the "from the person" language of the carjacking statute in the same manner as identical language in the robbery statute has been construed. (People v. Hoard (2002) 103 Cal.App.4th 599, 608-609, 126 Cal.Rptr.2d 855; People v. Vargas (2002) 96 Cal. App.4th 456, 462-463, 116 Cal.Rptr.2d 867; People v. Medina, supra, 39 Cal.App.4th 643, 650, 46 Cal.Rptr.2d 112.)[4] In light of the legislative history of Penal Code section 215, two Courts of Appeal have concluded that "the Legislature intended to treat carjackings just like robbery with two exceptions: (1) carjackings require an intent to either temporarily or permanently deprive the owner of the property whereas robbery always requires an intent to permanently deprive, and (2) carjackings only involve vehicles whereas robbery may involve any type of property." (People v. Alvarado, supra, at p. 160, 90 Cal. Rptr.2d 129 italics added; accord, People v. Vargas, supra, at p. 462, 116 Cal. Rptr.2d 867.)
The factor of violenceeven if only threatenedis particularly germane. Both a Court of Appeal and the Supreme Court have accepted that "carjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim ... and the public at large." (People v. Antoine (1996) 48 Cal.App.4th 489, 495, 56 Cal.Rptr.2d 530; accord, People v. Hill, supra, 23 Cal.4th 853, 859, 98 Cal.Rptr.2d 254, 3 P.3d 898.) As with robbery, "the serious potential for harm ... exists whenever there is a confrontation between the taker of a vehicle and the victim" (People v. O'Neil, supra, 56 Cal.App.4th 1126, 1133, 66 Cal.Rptr.2d 72). On this point, the courts and the Legislature speak with one voice.
*142 The genealogy between carjacking and robbery is undeniable. Much of the statutory language is identical. The legislative history demonstrates that carjacking was made a separate offense because of perceived difficulties with obtaining convictions under the robbery statute when the takings were temporary. There is a growing body of precedent that has examined carjacking with reference to the established law of robbery. The evils and dangers of each offense mirror those found with the other. It is impossible to disagree with the conclusions that "the Legislature obviously had the robbery statute in mind when it enacted the carjacking statute" (People v. Medina, supra, 39 Cal. App.4th 643, 650, 46 Cal.Rptr.2d 112) and that it "intended to treat carjackings just like robbery" (People v. Vargas, supra, 96 Cal.App.4th 456, 462, 116 Cal.Rptr.2d 867; People v. Alvarado, supra, 76 Cal.App.4th 156, 160, 90 Cal.Rptr.2d 129). We agree with People v. Hamilton, supra, 40 Cal. App.4th 1137, 1142, 47 Cal.Rptr.2d 343, that "carjacking is very closely related to robbery...."[5] In our view the crimes are so closely related that it is reasonable and logical to conclude the same reasons for deeming robbery to cover personal as well as vicarious arming are equally applicable to carjacking. As has been noted, legislative history shows that the Legislature created the new crime of carjacking as a species of robbery.
Our Supreme Court has determined that "The criminal offense of `[r]obbery while armed with a dangerous or deadly weapon' specified in subdivision (b)(3) of section 707 may reasonably perform its function in the statutory scheme whether the arming is `personal' or `vicarious.' Certainly, a minor's participation in an armed robbery may be deemed sufficient to raise the presumption of unfitness ... and to trigger the extended period of California Youth Authority control ... without regard to the precise character of such participation." (In re Christopher R., supra, 6 Cal.4th 86, 95, 23 Cal.Rptr.2d 786, 859 P.2d 1301.)[6] We see no reason this rationale should not apply equally to "[c]arjacking ... while armed with a dangerous or deadly weapon." This conclusion comports with, and promotes, the Legislature's intent and the purposes of subdivision (b)(25). (People v. Walker, supra, 29 Cal.4th 577, 581, 128 Cal.Rptr.2d 75, 59 P.3d 150; People v. Coronado, supra, 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.) No reason or purpose would be served by construing subdivision (b)(25) in a different manner than that given to the robbery subdivision in the same statute. It follows that the juvenile court did not err when it concluded that what Travis *143 did constituted "[c]arjacking ... while armed with a dangerous or deadly weapon" within the meaning of subdivision (b)(25).
Extended discussion will not be needed to resolve Travis's remaining contentions.
In Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, the United States Supreme Court held that "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Ninth Circuit Court of Appeals has applied this principle to require that a jury determine the truth of prior juvenile adjudications for purposes of federal recidivist statutes. (U.S. v. Tighe (2001) 266 F.3d 1187, 1194-1195.) Based on these two authorities, Travis claims he was "entitled to a jury trial before the consequences of a Section 707(b) offense could be applied to him." This claim is, at best premature; it will be ripe only if, as an adult, Travis is charged with an offense that might be enhanced by this juvenile adjudication. It will be then, and only then, that a jury will be required. (See Pen.Code, §§ 667, subd. (d)(3), 1170.12, subd. (b)(3).) We note also that Travis made no request for a jury trial in the juvenile court, and that nothing in either Apprendi or Tighe gives the least indication that either court intended to abrogate the long-established principle that there is no right to jury trial in juvenile court proceedings. (See In re Myresheia W. (1998) 61 Cal.App.4th 734, 736-741, 72 Cal.Rptr.2d 65 and authorities cited.)
The final argument advanced by Travis is that the juvenile court abused its discretion when it ordered him committed to the California Youth Authority (CYA). This argument is without merit.
The probation officer recommended a CYA commitment based on the following information: Travis's mother is deceased. His father apparently lives in Louisiana, although his precise whereabouts are unknown. Travis presently lives with his sister, who has had drug-related problems and was on probation. Because a gun was involved in the underlying incident, no local placement was possible. At the dispositional hearing the deputy district attorney elaborated on some of these points: "There is no local home to send him to.... [¶] Certainly a group home would not be appropriate in a case like this. It is too serious." "I understand that he has been living with his sister. That's a location where a lot of marijuana dealing takes place within the residence and ... that's not an appropriate place for the minor to reside."[7] At the hearing the court officer also noted that Travis "doesn't have an adequate parent, and that's a requirement for commitment to Camp, that a young man has a parent who is willing to cooperate. He doesn't have that at this time."
Travis concedes he was ineligible for probation or placement in most of the supervised juvenile programs. (See §§ 654.3, subd. (1), 725, subd. (a).) He faults the probation officer's report for "limited investigation" and faulty reasoning, but no such arguments were pressed before the juvenile court and are consequently not before us on appeal. (E.g., People v. Welch (1993) 5 Cal.4th 228, 234, 19 Cal.Rptr.2d 520, 851 P.2d 802 and decisions cited.) Travis's counsel did point out that the report erroneously stated Travis personally used the gun. This statement *144 was, however, almost certainly treated as false by the court, which had heard the evidence concerning the nature and extent of Travis's participation. There is nothing in the record showing that the court accepted the erroneous statement and we cannot assume that it played any part in the court's ultimate decision. (Evid.Code, § 664.) In any event, although Travis may not have wielded the gun, he clearly was a participant in a crime where a gun was used. It was this factor that disqualified Travis from being accepted into local programs that would be a less restrictive placement than a CYA commitment. Travis did not then, and does not now, demonstrate that there were less restrictive placements available not considered by the probation officer.
As for Travis's claim that "the record reflects that the juvenile court assumed that all section 707, subdivision (b) offenses require CYA commitment," our review of the dispositional hearing transcript found nothing to "reflect" that the court was proceeding under such a misimpression. (Evid.Code, § 664; Ross v. Superior Court (1977) 19 Cal.3d 899, 913-915, 141 Cal. Rptr. 133, 569 P.2d 727.) What the juvenile court had before it was a young man who had committed a serious crime with an unquestioned potential for violence and possibly even death. Because of the nature of that crime, and because there was no nearby parent, no local programs were available. The probation officer stated in her report that CYA "is the best source of rehabilitation for this young man." The juvenile court agreed, ordering the commitment because "I don't think that there is anything short of the Youth Authority that would assist ... in the rehabilitation of the minor given all of the circumstances of this particular case." We are unable to conclude that this decision amounted to an abuse of the court's discretion because it does not satisfy the test of exceeding the bounds of reason. (E.g., In re Stephanie M. (1994) 7 Cal.4th 295, 318-319, 27 Cal.Rptr.2d 595, 867 P.2d 706 and decisions cited.)
The order of commitment is affirmed.
We concur: SEPULVEDA and RIVERA, JJ.
NOTES
[1] Hereinafter abbreviated to "subdivision (b)(25)." Further statutory references are to the Welfare and Institutions Code unless otherwise indicated. Although defendant was tried as a juvenile, the allegation of a subdivision (b)(25) offense may expose a juvenile over 14 to trial as an adult.
[2] Subdivisions (a)(1) and (a)(2) of Penal Code section 12022 constitute the zenith of explicitness; both state that their respective enhancement terms of imprisonment "shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed ... whether or not the person is personally armed" with the designated firearm.
[3] For example, one court held that Penal Code section 12022.3, subdivision (b) applies only to one who is personally armed with a firearm because there was no "express legislative direction" for a wider application. (People v. Reed (1982) 135 Cal.App.3d 149, 153, 185 Cal.Rptr. 169.) Another court, construing the same provision, reached the opposite conclusion on the basis of the same legislative silence: "If the Legislature had intended to restrict imposition of this enhancement to persons who are personally armed, it would have inserted the word `personally' as it did in other enhancement provisions." (People v. Le (1984) 154 Cal.App.3d 1, 11, 200 Cal.Rptr. 839.)

For a detailed discussion of the differing approaches to the problem in general, see People v. Rener (1994) 24 Cal.App.4th 258, 262-267, 29 Cal.Rptr.2d 392 and authorities cited.
[4] It is also pertinent to note that Division Two of this court construed the offense of kidnapping during the commission of carjacking (Pen.Code, § 209.5) as analogous to kidnapping during the commission of robbery (Pen. Code, § 209). (People v. Perez (2000) 84 Cal. App.4th 856. 860-861. 101 Cal.Rptr.2d 376.)
[5] The court in People v. Dominguez, supra, 38 Cal.App.4th 410, 45 Cal.Rptr.2d 153 stated that carjacking "is nothing more than an aggravated violation of the unlawful driving and taking of a motor vehicle as defined in Vehicle Code section 10851" thus "making an analogy to robbery ... inappropriate." (Id. at pp. 418-419, 45 Cal.Rptr.2d 153.) We must respectfully disagree with this conclusion because it pays insufficient attention to the fact that both robbery and carjacking, unlike a violation of Vehicle Code section 10851, require the presence of a victim whose property is taken "by means of force or fear." On the other hand, "Vehicle Code section 10851 can be violated simply by the act of driving a car without the owner's consent; the defendant need not have committed the original act of taking the car from the owner." (People v. Frye (1994) 28 Cal.App.4th 1080, 1086, 34 Cal.Rptr.2d 180, italics added, original italics omitted.)
[6] The Attorney General erroneously states that subdivision (b)(25) was enacted after Christopher R. was decided. Christopher R. was filed on October 28, 1993, but the bill enacting subdivision (b)(25) was signed by the Governor on September 30, 1993, not October 30 as stated by the Attorney General.
[7] Indeed, the victim testified that it was Travis from whom he was intending to buy marijuana, at Travis's home, as he had on numerous occasions in the past.