Filed 10/20/15  P. v. Walker CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066545 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE339870) |
| OTIS CONWELL WALKER III, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

Law Offices of Russell S. Babcock and Russell S. Babcock for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, A. Natasha Cortina and Parag Agrawal, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Otis Conwell Walker, III of first degree robbery (Pen. Code,[1] § 211; count 1), residential burglary (§ 459; count 2), and carjacking (§ 215, subd. (a); count 3). It found true allegations that Walker committed counts 1 and 2 in an inhabited building (§§ 212.5, subd. (a), 460) and that he committed count 2 while another person other than an accomplice was present in the residence (§ 667.5, subd. (c)(21)). Walker waived a jury trial on his prior crimes and admitted a prior prison commitment (§§ 667.5, subd. (b), 668). The trial court sentenced Walker to four years in state prison consisting of the middle term of four years on count 1 and a concurrent three-year term on count 3. The court stayed the four-year term for count 2 and struck the one-year prison prior.

On appeal, Walker contends the evidence is insufficient to support his count 3 carjacking conviction. We affirm the judgment.

FACTUAL BACKGROUND

On the evening of April 27, 2014, Richard Woods rented a room at the Villa Embasadora Inn. At around 1:00 a.m., Woods was surprised by a knock on his door. He opened the door and saw Walker wearing a hoodie and leaning forward about one foot away from his face, which felt to Woods like an immediate confrontation and "scared the hell out [of him]." Walker told Woods that Woods owed him money, but Woods denied this accusation. Woods felt like a "caged animal" or that someone was getting ready to "bum-rush" him. When Woods tried to explain that he did not owe Walker money, Walker forced his way into the room. Woods did not resist because he was "scared to

---

[1] Statutory references are to the Penal Code.

2

death" of Walker, who Woods believed was "unpredictable"; Woods did not know what he was going to do. He also "didn't think he could defend himself" because Walker was stronger, taller, and heavier than him. Walker told Woods to "get in the bathroom or I'll knock you the [f] out." Woods believed the threat. As Woods entered the bathroom, he saw Walker rip the phone cord out of the wall. After Woods entered the bathroom, Walker turned on the bathroom sink and began rummaging through the room. The running water scared Woods, who was "already afraid of everything" and did not know what Walker was going to do. When Woods opened the bathroom door several minutes later, Walker became angry and threatened to knock Woods out if he did not close the door and get back in the bathroom. Walker took Woods's car keys, cell phone, and wallet containing $60 while Woods remained in the bathroom.

Walker eventually let Woods out of the bathroom. He began telling Woods to get dressed and describing what they were going to do next, which made Woods feel "like his puppet." Woods saw Walker holding Woods's car keys, cell phone, and wallet. Walker told Woods they were going to the hotel office and Woods was going to tell them he lost his room key. The men left the room and headed to the hotel office. Woods did not attempt to escape because he was still scared of Walker, who was right next to him and in possession of his wallet, cell phone, and car keys, and Woods did not believe he could outrun him.

About halfway to the hotel office, Walker said he was going to let Woods go. Walker returned Woods's cell phone and wallet, but kept Woods's car keys. The $60 that was previously in the wallet was missing. Although Woods thought he might be free to

3

leave, Walker remained by his side as they walked to Woods's car parked about 50 feet away. Woods did not call the police at this time because he was terrified and did not know what Walker was going to do.

As they approached Woods's car, Walker told Woods, "I'm going to drive you" and asked him how much money he had in the bank. Woods was still scared of Walker and concerned that he was unpredictable. Because Woods thought he might get badly hurt if Walker knew he actually had $2,000 in the bank and Woods felt defenseless, he told Walker he only had $100 in the bank. Woods was careful to tell Walker about a broken lock on his car to prevent him from becoming angry that Woods was trying to "pull something" on him.

Walker entered the driver's seat and Woods entered the front passenger seat. Before starting the car, Walker asked Woods the location of his bank. Woods told Walker the location of the bank he used, but Walker did not want to go that far. Although Woods did not want Walker to drive, he felt that he could not run because Walker had his car and thought he would not get his car back. Walker drove to a different bank a couple of blocks away and parked in front of an automated teller machine (ATM). During the drive, Woods began thinking about an escape plan, since he had his cell phone. Woods exited the vehicle and pulled out his bank card from his wallet, and Walker grabbed the wallet back from his hand. As Woods was about to close the door, he decided it was a "make-or-break moment." He told Walker to "get the [f] out" of his car, threatened to call the police, and ran down the side of the bank while

4

dialing 911. Walker ran on foot and left Woods's car, wallet, and keys. Woods was "freaked out," angry and still scared when he called the police.

At 1:25 a.m., officers responded to Woods's call. They observed Woods to be very upset and angry, frantic, and nervous. An officer later took Woods to a gas station to identify a man detained there, but the man was not the suspect. Woods asked the officer to accompany him to the hotel because he was scared that Walker would be there. When they arrived at the hotel, officers had Woods identify a second man they had detained there, and Woods identified Walker as the suspect.

DISCUSSION

I. *Standard of Review*

On Walker's challenge to the sufficiency of the evidence to support his carjacking conviction, we apply settled review standards: " 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.) An appellate court must accept logical inferences that the jury might have drawn from the

5

evidence, even if the court would have concluded otherwise.  (*People v. Solomon* (2010) 49 Cal.4th 792, 811-812.)  "Unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction."  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

## II.  *Legal Principles*

"A conviction for carjacking requires proof that (1) the defendant took a vehicle that was not his or hers (2) from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle (3) against that person's will (4) by using force or fear and (5) with the intent of temporarily or permanently depriving the person of possession of the vehicle."  (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 534, citing § 215, subd. (a).)

With some exceptions that do not affect this case, the Legislature intended to analogize carjacking to robbery.  (*In re Travis W.* (2003) 107 Cal.App.4th 368, 375, 377; *People v. Alvarado* (1999) 76 Cal.App.4th 156, 160 [unlike robbery, carjacking only involves vehicles and can be shown by an intent to either temporarily or permanently deprive the owner of property], disapproved on another ground in *People v. Lopez* (2003) 31 Cal.4th 1051, 1063, fn. 2; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 702-703 [the claim-of-right defense applies to robbery but not carjacking].)  Although the analogy between carjacking and robbery is imperfect as a result of these differences, robbery and carjacking require the same general elements, and the well-developed law on robbery applies to carjacking.  (See *In re Travis W.*, *supra*, 107 Cal.App.4th at p. 377 ["There is a growing body of precedent that has examined carjacking with reference to the established

6

law of robbery"]; *People v. Duran* (2001) 88 Cal.App.4th 1371, 1377; *People v. Alvarado*, *supra*, 76 Cal.App.4th at p. 160.)

The use of fear may be shown by direct proof of fear or inferred from the circumstances. (*People v. Gomez* (2011) 192 Cal.App.4th 609, 623, disapproved on another ground in *People v. Elizalde* (2015) 61 Cal.4th 523, 538; *People v. Anderson* (2007) 152 Cal.App.4th 919, 946 ["the fear necessary for robbery is subjective in nature, requiring proof 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished' "].) "So long as the perpetrator uses the victim's fear to accomplish the [crime], it makes no difference whether the fear is generated by the perpetrator's specific words or actions designed to frighten, or by the circumstances surrounding the taking itself." (*People v. Flynn* (2000) 77 Cal.App.4th 766, 772.)

Although robbery requires an intent to permanently deprive the owner of the property, carjacking requires an intent to *either* temporarily or permanently deprive the owner of the automobile. (*People v. Alvarado*, *supra*, 76 Cal.App.4th at p. 160; *People v. Hamilton* (1995) 40 Cal.App.4th 1137, 1142.) The intent to dispossess must exist before or during the use of force or fear. (*People v. Gomez*, *supra*, 192 Cal.App.4th at p. 618; CALCRIM No. 1650.) Like the fear element, such intent need not be directly proven but may be reasonably inferred from all of the circumstances. (*People v. Johnson* (2015) 60 Cal.4th 966, 988-989; *People v. Hall* (1967) 253 Cal.App.2d 1051, 1054; *People v. Jennings* (1958) 158 Cal.App.2d 159, 165-166.)

III. *Substantial Evidence Supports the Force or Fear Element of Carjacking*

Walker does not challenge the first three elements of his carjacking conviction, namely, that he took a vehicle that was not his own, in Woods's immediate presence, and against Woods's will. Rather, he contends that no evidence establishes he used force or fear to take Woods's car. Though he concedes Woods was initially afraid of him in the room, Walker asserts that Woods's fear dissipated after they left the hotel together. He maintains Woods expressed anger instead of fear when he told Walker to get out of the car and Walker left without protest or struggle. On this record, however, we conclude substantial evidence—both direct and circumstantial—supports this element of carjacking.

Walker surprised Woods in the middle of the night and forced his way into Woods's hotel room, then subjected Woods to threats of physical harm while he ripped the phone cord out of the wall and took Woods's possessions. Specifically, Walker threatened to knock Woods out if he did not enter the bathroom. He threatened Woods a second time after Woods opened the bathroom door. In this way, Walker subjected Woods to "specific words or actions designed to frighten. " (*People v. Flynn*, *supra*, 77 Cal.App.4th at p. 772.) Woods testified he complied with Walker's demands out of fear, as Walker was taller and stronger than Woods, and Woods was still afraid after they left the hotel room and while Walker stayed by his side as they approached Woods's car together. Even after Walker returned Woods's cell phone, Woods testified he did not call 911 because he was still scared of Walker. The evidence does not show Woods's fear dissipated, but that he remained fearful of Walker well after the robbery occurred, despite

8

Walker's statement that Woods was free to leave. These events took place over a 25-minute period, and according to Woods, he feared Walker at every point of these events, acquiescing to Walker's announcement that he was going to drive. Contrary to Walker's contentions, this constitutes direct evidence that Woods remained in fear, allowing Walker to dispossess Woods of his car.

Additionally, the jury could infer from the circumstances surrounding Walker taking over Woods's vehicle that he used fear to accomplish his taking. The circumstances here are similar to those in *People v. Flynn*, *supra*, 77 Cal.App.4th 766, in that the jury could reasonably infer from the circumstances that Walker used fear to temporarily dispossess Woods of his vehicle. In *Flynn*, the defendant loitered with five other men in a street corner that was part of his gang's territory. The defendant grabbed the physically smaller victim's bag as she walked past the group. (*Id.* at p. 770) The victim was "angry, shocked, and afraid of being jumped" and attempted to pull her bag from the defendant. (*Ibid.*) After the defendant took the bag, he removed and displayed a gun and a $5 bill from the bag. (*Ibid.*) The victim ran after the defendant screamed at her, and she was too afraid to report the crime until her mother convinced her to do so 10 days later. (*Ibid.*) The jury convicted the defendant of robbery, and the Court of Appeal affirmed. (*Id.* at pp. 770, 773.) It explained the fear element of robbery can result not just from the defendant's specific words or actions, but also the circumstances surrounding the taking. (*Id.* at p. 772.) Based on the circumstances, the defendant used fear to accomplish the robbery "just as surely as if he had verbalized the threats inherent in the surrounding circumstances." (*Id.* at p. 773.) The defendant was physically larger

9

than the victim, his group outnumbered her six to one, and he committed the crime in his gang's territory. (*Ibid.*) His "brazen behavior once he was armed with the stolen gun revealed his confidence in the powerlessness of the victim," and the fearful victim did not report the crime until 10 days later. (*Id.* at pp. 772-773.) Walker's aggressive behavior throughout the events, and Woods's reaction to them, permits the jury to conclude from the circumstances that Walker used Woods's fear to take control of his car.

Evidence that Woods eventually demanded that Walker get out of his car, and threatened to call the police does not disprove the fear element. (See *People v. Magallanes*, *supra*, 173 Cal.App.4th at p. 529.) In *Magallanes*, the defendant entered the driver's seat and attempted to drive while the victim placed her son into his car seat. (*Id.* at p. 532.) In addition to feeling shocked and angry, the victim feared for her safety and the safety of her son. (*Ibid.*) She pulled her son out of the car, tried to open the locked front passenger door, and banged on the door while screaming and cursing at the defendant. (*Ibid.*) The defendant never said anything to the victim and drove off 10 or 15 seconds later. (*Id.* at pp. 532-533.) The court held sufficient evidence established the fear element. (*Id.* at p. 534.) Although the victim expressed both anger and fear, whatever anger she expressed did not negate her fear of the defendant. (*Ibid.*; *People v. Davison* (1995) 32 Cal.App.4th 206, 217 [yelling profanities and chasing robbery suspects did not establish absence of fear].) Here, the evidence additionally showed Woods himself fled from the area and called police after he demanded that Walker leave his car. The jury reasonably concluded that Woods remained fearful throughout these events, and that Woods's demand that Walker get out of his car did not negate his fear.

10

IV. *Substantial Evidence Supports the Intent Element of Carjacking*

Walker also contends that no evidence established his intent to deprive Woods of his car. He asserts that Woods remained in control of his car at all times and allowed Walker to drive it without offering any verbal or physical resistance. Walker argues he would not have brought Woods with him if he intended to take the car, and Woods exercised his dominion and control over the car when he told Walker to get out. The People respond that the evidence shows Walker had the requisite intent when he drove Woods's car against Woods's will to the ATM, a destination of Walker's choosing.

We agree the record contains substantial evidence that Walker intended to temporarily dispossess Woods of his car, which intent existed while Woods was still frightened and intimidated from Walker's prior threats and actions. A defendant forms the requisite intent if he commits a crime against the victim and later takes the victim's vehicle using the victim's fear of future harm. (See *People v. Gomez*, *supra*, 192 Cal.App.4th at pp. 622-623.)

In *People v. Gomez*, the Court of Appeal addressed the defendant's contention that there was no evidence he intended to deprive the victim of his truck at the same time as he used force or fear against the victim. (*People v. Gomez*, *supra*, 192 Cal.App.4th at pp. 618, 619.) There, four men exited a car driven by the defendant and approached the victim as he walked to his apartment. (*Id.* at p. 614.) The four men repeatedly hit the victim, and the defendant twice threw a concrete block or brick at him. (*Ibid.*) One of the men obtained the keys to the victim's truck during the attack, but the group ran to their car and left. (*Id.* at pp. 614, 619-620.) After they drove away, one of the men said,

"[H]ey, I got [the victim's] car keys" and told the defendant to turn back. (*Id.* at p. 618.) The group returned 10 to 20 minutes after the attack. (*Id.* at pp. 614, 615.) The victim stayed in his apartment but made eye contact with two of the men as they exited the defendant's car. (*Id.* at pp. 614, 615.) After failing to enter the apartment, the two men approached the victim's truck, entered it, and drove off. (*Id.* at pp. 614, 615, 618.) The victim stayed inside because he was afraid the two men might assault his family, and he wanted to be there to protect them. (*Id.* at pp. 614, 615, 623.)

The Court of Appeal pointed out there was no evidence that the defendant had formed any intent to deprive the victim of his truck during the physical attack. (*People v. Gomez*, *supra*, 192 Cal.App.4th at p. 619.) It was undisputed that one of the men took possession of the victim's car keys during the assault, but they took no action on the truck during or immediately after the assault. (*Id.* at p. 622.) "Just as the act of taking a car by one who steals the keys can imply that the key thief *intended* to steal the car when he took the keys, the failure to take, mention, ask about, or look for the vehicle when the keys are taken implies the absence of an intent to take the car." (*Ibid.*) However, the appellate court held the evidence supported the conclusion that the attackers intended to take the truck upon their return to the victim's apartment, and that they used fear *at that time* to accomplish the taking. (*Id.* at p. 619.) The defendant knew his associate intended to take the truck when he announced that he had the car keys and told the defendant to turn back. (*Id.* at pp. 618, 623.) The associates used the victim's fear to take the truck because the victim was too frightened to stop them and stayed inside to protect his family. (*Id.* at pp. 619, 622, 623.)

12

The rationale in *Gomez* extends to this case. As *Gomez* points out, "the act of taking a car by one who steals the keys can imply that the key thief *intended* to steal the car when he took the keys . . . ." (*People v. Gomez, supra*, 192 Cal.App.4th at p. 622.) Similarly, here, Walker took Woods's car keys while Woods remained in the bathroom of his hotel room, cowed by Walker's threats of physical harm. He then kept Woods's keys after he accompanied Woods out of the room, followed Woods out to his car, then entered and drove the car, all while Woods remained in fear. There was no break in Walker's contact with Woods during the 25-minute period from Walker taking Woods's keys to Woods fleeing his car and dialing 911, unlike in *Gomez*, where the defendant's group took the victim's keys but then left the scene, reflecting no intent during their assault to take the victim's car. Sufficient evidence thus supports the jury's finding that Walker possessed the requisite intent to permanently or temporarily deprive Woods of his car by use of fear.

Walker suggests the evidence shows he did not intend to take Woods's car because he brought Woods with him; he asserts Woods "was all times with his vehicle and continued to exercise dominion and control over his vehicle" and thus no carjacking could have occurred. He maintains these facts distinguish his case from *People v. Duran, supra*, 88 Cal.App.4th at p. 1377.[2] These arguments appear to conflate the taking

---

[2]      In *Duran*, the defendant crashed his car following a robbery and an attempted robbery. (*People v. Duran, supra*, 88 Cal.App.4th at p. 1374.) The victim, who was driving a car with his wife and infant son, witnessed the accident and pulled over to call for help. (*Ibid.*) The defendant pulled a gun on the victim, forced him back into his car, and ordered him to drive. (*Ibid.*) He then entered the backseat, pointed a gun at the

element of carjacking with the intent element. To the extent Walker relies on *Duran* to challenge the evidence of his dominion and control over Woods's vehicle, it does not assist him. Walker plainly exerted dominion and control over the car by retaining the car keys and telling Woods he was going to drive them both. In *Duran*, the defendant exercised dominion and control over the car by threatening the victim and his family and ordering him to drive. A fortiori, evidence that a defendant took a victim's keys through fear, remained beside the victim, told the victim "I'll drive you," then started and proceeded to drive the car, as occurred here, is manifest evidence of dominion and control.

Woods's presence in the vehicle does not negate Walker's intent to deprive or exercise of dominion and control. A defendant completes a carjacking after obtaining dominion over the property, "even if the owner still has some measure of nominal control." (*In re Travis W.*, *supra*, 107 Cal.App.4th at p. 376, citing *People v. Duran*, *supra*, 88 Cal.App.4th at p. 1377; *People v. Gray* (1998) 66 Cal.App.4th 973, 984-985; *People v. Alvarado*, *supra*, 76 Cal.App.4th at pp. 160-161.) Dispossession occurs "not only when the perpetrator physically forces the victim out of the vehicle, but also when

---

infant's head, and threatened to kill them all. (*Ibid.*) He dictated the speed and direction to the victim for around 20 minutes until he asked to be dropped off. (*Id.* at p. 1375.) The *Duran* court held that a felonious taking for purposes of carjacking can occur when the victim remains in the vehicle. (*Id.* at pp. 1375-1376.) It concluded a taking had occurred in that case when the defendant imposed his dominion and control over the car by ordering the victim to drive, and victim responded by actually driving, provided the asportation or "carrying away" element. (*Id.* at p. 1377.) We are unsure of *Duran*'s relevance to the intent element of carjacking at issue here, other than to say the victim's presence in the vehicle plainly did not negate the intent element as the court found a carjacking had occurred. The intent element, however, was not the focus of *Duran*'s holding.

14

the victim remains in the car and the defendant exercises dominion and control over the car by force or fear." (*People v. Gray*, 66 Cal.App.4th at p. 985.)

That the facts of this case differ from the traditional carjacking scenario does not affect our analysis, as long as the statutory elements of a carjacking are met. (See *People v. Johnson*, *supra*, 60 Cal.4th at p. 990 ["This might not be a classic carjacking such as when the perpetrator approaches a car stopped at a red light and, at gunpoint, forces the driver and any passengers out, then drives the car away. But all of the statutory elements of carjacking are met"]; see also *People v. Hoard* (2002) 103 Cal.App.4th 599, 608, 609, fn. 44 [carjacking conviction upheld where defendant demanded keys to jewelry cases and victim's car at gunpoint, then drove off with the car while both victims were restrained inside the store], disagreed with on another ground by *People v. Coleman* (2007) 146 Cal.App.4th 1363, 1373; *People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1132-1133 [victim jumped in the bed of his truck as the defendant drove off with his vehicle but later relinquished control out of fear]; *People v. Medina* (1995) 39 Cal.App.4th 643, 651-652 [immediate presence element of carjacking satisfied even though an accomplice had lured the victim away from his car by trick or device].) Such is the case here.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McINTYRE, Acting P. J.


IRION, J.