Filed 1/22/14  In re I.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>I.M.,<br><br>        Defendant and Appellant. | F066477<br><br>(Super. Ct. No. 512867)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Kathleen A. McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Levy, Acting P.J., Kane, J., and Peña, J.

The court continued appellant, I.M., as a ward of the court (Welf. & Inst. Code, § 602),[1] after he admitted allegations charging him with possession of a concealed dirk or dagger (Pen. Code, § 21310).

On appeal, appellant contends the court erred by ordering him into placement: 1) without an adequate case plan; 2) without considering limiting his mother's right to make educational decisions for him; and 3) without completing form JV-535. We affirm.

## FACTS

On August 31, 2011, then 10-year-old appellant and four other male juveniles broke into a home on Guthrie Avenue in Modesto.

On January 7, 2012, an ongoing dispute between appellant's family and a woman culminated in appellant and his brother, N.M., breaking the windows of a car belonging to the woman's boyfriend.

On February 9, 2012, appellant was arrested and admitted participating in the Guthrie Avenue burglary and a second uncharged burglary.

On February 14, 2012, the district attorney filed a petition charging appellant with first degree burglary (Pen. Code, § 459).

On March 6, 2012, appellant was released from custody on house arrest.

On April 7, 2012, officers from the house arrest program conducted a home visit at appellant's residence. Appellant's mother told the officers that appellant did not take the house arrest program seriously and would often leave without her permission.

On May 21, 2012, the court issued a warrant for appellant's arrest after he failed to appear at a hearing on that date.

On June 6, 2012, appellant was arrested on the outstanding warrant.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

On July 19, 2012, appellant was released from custody.

On July 30, 2012, the probation department filed a Dispositional Social Study Report.

On August 27, 2012, the court made appellant a ward of the court and placed him on probation. The court also committed appellant to juvenile hall for 100 days with credit for 79 days already served.

On November 3, 2012, at approximately 1:48 a.m., Modesto police officers conducted a traffic stop of a stolen vehicle driven by a 13-year-old male with then 12-year-old appellant and two other juveniles as passengers. Appellant initially gave a false name. He was also found to be in possession of a sharpened tool with a homemade handle.

On November 6, 2012, the district attorney filed a subsequent petition charging appellant with vehicle theft (count 1/Veh. Code, § 10851, subd. (a)), receiving stolen property (count 2/Pen. Code, § 496d, subd. (a)), and carrying a concealed dirk or dagger (count 3).

On November 21, 2012, the probation department filed a Dispositional Social Study. The report contained much of the same information as the earlier report and indicated that appellant's father was serving a prison sentence on a conviction for domestic violence (Pen. Code, § 273.5, subd. (a)). Appellant's mother was on probation for possession for sale of a controlled substance. His brother, N.M., was declared a ward of the court on June 15, 2011, based on his adjudication for first degree burglary and was in custody pending a violation of probation hearing. Appellant reported that he last attended school about two weeks earlier and that he was receiving failing grades. He also admitted using marijuana,[2] not obeying his curfew, sneaking out of the house without

---

[2]     The earlier report indicates that appellant admitted smoking marijuana daily.

3

permission, and running away from home twice. Appellant's mother reported that appellant usually received failing grades and that he was not currently attending school because he had been expelled. However, she did not know the reason for the expulsion. Although appellant and his mother denied he was involved in gang activity or associated with gang members, appellant committed his most recent offenses with Norteño gang members and the earlier report indicates appellant admitted associating with Norteño gang members.

The report further indicated that appellant had 17 referrals to Child Protective Services (CPS) between May 2004 and May 2012, and that allegations of general neglect were substantiated with respect to three referrals including one on October 20, 2011, and one on February 7, 2012. The report recommended supervision services in an effort to avoid the need for out-of-home placement.

At a hearing on November 21, 2012, appellant admitted the possession of a concealed dirk or dagger offense in exchange for the dismissal of the two other counts. Afterwards, based on the February 7, 2012, referral to CPS, the juvenile court ordered the probation department to prepare a section 241.1[3] report to assist the court in determining which status, dependent or ward, was appropriate for appellant.

On December 7, 2012, the probation department filed a section 241.1 Joint Assessment Report, which indicated that the October 20, 2011, CPS referral involved appellant's father physically abusing appellant's mother in front of a seven-year-old

---

[3]      Section 241.1 provides: "*Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602*, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and *the court shall determine which status [dependent or ward] is appropriate for the minor*...."  (Italics added.)

child.  Appellant's father was arrested on that date.  The February 7, 2012, referral involved appellant's mother not being able to control or provide appropriate supervision for her children.  Appellant's mother accepted voluntary family maintenance services as a result of this latter referral and had been receiving services since February 17, 2012.

The report reiterated the circumstances of appellant's criminal history.  It also indicated the family was moving to a new home where appellant would have his own room, that appellant's father had recently been released from prison but was not allowed back into the family residence, and that appellant's mother was suffering from a brain tumor.  The report recommended that appellant be continued a ward of the court under the continued supervision of the probation department.  The report did not recommend placement for appellant.

At a hearing on December 11, 2012, the probation department filed the following documents:  a Minor and Family Assessment form and a Case Plan that were originally filed on February 14, 2012, which had updated comments and notes; and an Additional Case Plan and Information for Placement form that was only partially completed.[4] During the hearing, Katherine Kincheloe, a social worker from the Community Services Agency, informed the court that appellant's family was making minimal progress with the voluntary family maintenance services.  Kincheloe also advised the court that appellant's mother reported she had a brain tumor that required surgery and a second tumor that required further examination.  Appellant's mother also reported that she had five to six of her children and two grandchildren living in her household.

The court found that the status of ward would best serve appellant and stated it was going to order appellant into placement.  It also continued the hearing two days to

---

**4** This latter form indicated, in pertinent part, that appropriate placement for appellant would include family counseling, group and individual therapy, and substance abuse treatment.

allow the probation department to "prepare placement terms."  In explaining its decision to appellant's mother, the court stated, "After hearing from Ms. Kincheloe and *reviewing all of the reports*, I just don't see that I have a choice given where [appellant] is heading and what's been going on with this family.  We've tried."  (Italics added.)

On December 13, 2012, the court set appellant's maximum term of confinement at 80 months and ordered him into placement.  However, the probation department never provided a complete, updated case plan, nor did the court order the department to prepare such a plan.

## DISCUSSION

### The Case Plan

Appellant Forfeited Issues Relating to the Case Plan Required by Section 706.5 by his Failure to Object in the Juvenile Court

If the probation officer recommends placement in foster care, the social study "shall include a case plan, as described in Section 706.6."  (§ 706.5, subd. (a).)  The case plan "shall either be attached to the social study or incorporated as a separate section within the social study."  (§ 706.6, 1st par.)  If, however, "placement in foster care is not recommended by the probation officer prior to disposition, but the court orders foster care placement, the court shall order the probation officer to prepare a case plan, as described in Section 706.6, within 30 days of the placement order."  (§ 706.5, subd. (b).)  Section 706.6 provides a detailed list of information the case plan must provide, including, for example, the following:  "an assessment of the minor's and family's strengths and needs" and the "type of placement best equipped to meet those needs" (§ 706.6, subd. (b)); "a description of the type of home or institution in which the minor is to be placed" (§ 706.6, subd. (c)); "specific time-limited goals and related activities designed to enable the safe return of the minor to his or her home" (§ 706.6, subd. (e)); and "the projected

6

date of completion of the case plan objectives and the date services will be terminated" (§ 706.6, subd. (f)).

Here, since the court ordered appellant into placement, it erred by not ordering the probation department to prepare a complete, updated case plan within 30 days for appellant. Appellant couches the error in terms of the probation department failing to provide a complete, updated case plan. He argues that reversal is required because the Additional Case Plan filed on December 11, 2012, was missing much of the required information and this denied him his right to due process. However, neither appellant nor his attorney ever objected in the juvenile court to this case plan or to the court's failure to order the probation department to prepare a complete, updated case plan within 30 days.

"It is well established that procedural errors may not be raised at the appellate level if they were not raised in the trial court level. '[E]ven constitutional rights, including those of a minor in the area of juvenile court procedure, will ordinarily be [forfeited] by silence, i.e., by their nonassertion.'" (*In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1344.) "Any other rule would ""'permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'" [Citations.]'" (*In re Riva M.* (1991) 235 Cal.App.3d 403, 412.)

In the adult criminal context, "[i]t is settled that failure to object and make an offer of proof at the sentencing hearing concerning alleged errors or omissions in the probation report waives the claim on appeal." (*People v. Welch* (1993) 5 Cal.4th 228, 234-235 (*Welch*).) And, in *In re Travis W.* (2003) 107 Cal.App.4th 368 (*Travis W.*), the court applied the *Welch* waiver rule in a juvenile proceeding where the minor "fault[ed] the probation officer's report for 'limited investigation' and faulty reasoning...." (*Travis W.*, at p. 379.) Here, as in *Travis W.*, appellant challenges the content of his additional case

plan for the first time on appeal. We conclude, based on the foregoing principles, that appellant forfeited any claim of error with respect to the incomplete case plan provided by the probation department and/or to the court's failure to order the probation department to prepare a complete, updated case plan.

Appellant was not Denied the Effective Assistance of Counsel

Alternatively, appellant contends he was denied the effective assistance of counsel by defense counsel's failure to preserve this issue on appeal by making an appropriate objection.

> "We have previously explained that, '[i]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness ... under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]'" (*In re Avena* (1996) 12 Cal.4th 694, 721.)

> "[However,] a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington* (1984) 466 U.S. 668, 697.)

Appellant was only 11 years old when he committed a residential burglary with four other males and he admitted to an officer that he was involved in a second uncharged burglary. On January 7, 2012, appellant and his brother broke the windows of a car belonging to the boyfriend of a woman with whom appellant's family had an ongoing dispute. On November 3, 2012, appellant was accompanied by Norteño gang members when he was arrested in the early morning hours while riding around in a stolen vehicle

8

in possession of a concealed dirk or dagger. Further, appellant was not attending school, was failing, and was experimenting with marijuana. Appellant also would leave his residence without permission, stayed out after his curfew, had a history of running away, and did not abide by the court's home arrest program.

Moreover, appellant's mother was unable to adequately supervise appellant. As recently as February 7, 2012, a referral alleging her children were out of control and she was unable to supervise them was found to be substantiated by CPS. Additionally, her serious, ongoing medical problems virtually assured she would not be able to supervise appellant, especially since her household consisted of up to six of her children, including appellant and one brother who was also a ward of the court, and two grandchildren.[5] Thus, in view of the seriousness of appellant's conduct, his poor school attendance and performance, and his mother's inability to adequately supervise him, it is not reasonably probable the court would have foregone placement for appellant even if an objection by defense counsel had resulted in the probation department submitting a complete, updated case plan. Accordingly, we reject appellant's ineffective assistance of counsel claim.

Furthermore, for essentially the same reasons, even if appellant's claim was properly before us, we would find appellant was not prejudiced by the probation department's failure to provide the court with a complete, updated case plan for appellant. (*In re Riva M.*, *supra*, 235 Cal.App.3d at pp. 412-413 ["Because the issue is not one of constitutional dimension, the question is whether there is a reasonable

---

[5] Appellant's father was not an appropriate person to take custody of appellant and/or supervise him because of his extensive criminal history and his parole status as a result of his recent release from prison on his conviction for domestic violence.

probability the outcome would have differed in the absence of the procedural irregularity"].)[6]

Appellant contends the failure to provide a complete, updated case plan was prejudicial because: 1) the court did not have current information on appellant's grades and school attendance, disciplinary history, physical and mental health, etc.; and 2) appellant's family had made substantial "life changes" including the procurement of new housing. He also cites *In re Devin J.* (1984) 155 Cal.App.3d 1096 (*Devin J.*) and *In re L.S.* (1990) 220 Cal.App.3d 1100 (*L.S.*) to contend the failure to provide a complete, updated case plan requires reversal.

In *Devin J.*, before the minor was committed to the Department of Juvenile Justice (DJJ) (formerly CYA), the probation department provided the court with an evaluation and social study prepared for the minor's fitness hearing, but not a current social study report. The *Devin J.* court found that because the fitness and the disposition hearings served different purposes, "a social study prepared for the limited purpose of a fitness hearing fails to comply with the requirement of a current social study for a dispositional hearing." (*Devin J.*, at p. 1101.) Thus, it reversed the juvenile court's commitment order. (*Id.* at p. 1102.)

In *L.S.*, the juvenile court committed a minor adjudicated for possession of cocaine base for sale (Health & Saf. Code, § 11351.5) to the DJJ without a current probation report, although it apparently had available a 19-month old report that was prepared for a previous disposition hearing. In reversing the court's commitment order, this court noted that the preparation of a current social study report is mandatory and it found that a

---

[6] Although appellant perfunctorily asserts that the court deprived him of his constitutional right to due process by ordering him into placement without an adequate case plan, he forfeited this issue by his failure to offer any argument or pertinent authority in support of this contention. (*People v. Whalen* (2013) 56 Cal.4th 1, 72, fn. 28.)

"social study report prepared 19 months earlier as a result of appellant's [prior adjudication] does not satisfy this requirement." (*L.S.*, *supra*, 220 Cal.App.3d at p. 1105.)

*Devin J.* and *L.S.* are inapposite because, here, the juvenile court had before it *a current social study report*, a 241.1 report, and a social study report from July 2012, as well as the incomplete case plan. Collectively, these documents provided the court with a wealth of current information on appellant including the information noted earlier that appellant erroneously claims was not before the court. Further, the information provided by these documents was more than adequate for the court to address the central issue in appellant's case, whether or not to place him outside the home. (Cf. *In re Eugene R.* (1980) 107 Cal.App.3d 605, 615 [failure to provide complete social study harmless where requirement substantially complied with]; *In re Melvin J.* (2000) 81 Cal.App.4th 742, 755 [where the juvenile court "was aware of all underlying facts" at the time of the dispositional hearing, the lack of a current probation report was not reversible error].) Moreover, appellant cites his family's procurement of new housing as the only significant change that occurred since a completed case plan was filed in February 2012 and the court was aware of this change at least as of the December 11, 2012, hearing. Thus, even if appellant's claim were properly before us, we would reject it because appellant has not shown how he was prejudiced by the failure of the probation department to provide the court with a complete, updated case plan for him.

### The Alleged Failure to Make Educational Findings

California Rules of Court, rule 5.651(b)(2) (rule 5.651(b)(2)) provides:

> "At the disposition hearing ..., the juvenile court must address and determine the child's general and special education needs, identify a plan for meeting those needs, and provide a clear, written statement using *Findings and Orders Limiting Right to Make Educational Decisions for the Child, Appointing Educational Representative, and Determining Child's Educational Needs* (form JV-535), specifying the person who holds the

11

educational rights for the child. The court's findings and orders must address the following:

"(A) Whether the child's educational, physical, mental health, and developmental needs are being met;

"(B) Any services, assessments, or evaluations, including those for special education and related services, that the child may need;

"(C) Who is directed to take the necessary steps for the child to begin receiving any necessary assessments, evaluations, or services;

"(D) If the child's educational placement changed during the reporting period, whether [¶] (i) The child's educational records, including any evaluations of a child with a disability, were transferred to the new educational placement within two business days of the request for the child's enrollment in the new educational placement; and [¶] (ii) The child is enrolled in and attending school; and

"(E) Whether the parent's or guardian's educational rights should be limited; [¶] (i) If the court finds the parent's or guardian's educational rights should not be limited, the court must direct the parent to his or her rights and responsibilities in regard to the child's education as provided in rule 5.650(e) and (f); or [¶] (ii) If the court finds the parent's or guardian's educational rights should be limited, the court must determine who will hold the child's educational rights. The court must explain to the parent or guardian why the court is limiting his or her educational rights and must direct the parent or guardian to the rights and responsibilities of the education representative as provided in rule 5.650(e) and (f)."

Appellant contends the court erred by its failure to complete form JV-535, as required by rule 5.651(b)(2), and by its failure to consider limiting his mother's right to make educational decisions for him.

Appellant did not object to the court's failure to complete form JV-535 or to the court's alleged failure to consider limiting his mother's right to make educational decisions. Thus, for the reasons discussed in the previous section, we conclude appellant forfeited his right to raise these issues on appeal. (*Travis W.*, *supra*, 107 Cal.App.4th at p. 379.)

12

Alternatively, appellant contends he was denied the effective assistance of counsel by defense counsel's failure to preserve these issues by objecting in the juvenile court. However, appellant has again failed to show he was prejudiced by defense counsel's alleged deficient representation. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697.)

"[I]t is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed. [Citations.]" (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.) Accordingly, we will not presume that the court failed to consider limiting the right of appellant's mother to make educational decisions for him because appellant does not cite any evidence in the record that supports this contention.

Nevertheless, we note appellant's dispositional report did not recommend the court issue an order limiting his mother's right to make educational decisions for him. Nor did defense counsel or anyone else express any doubt as to the ability of appellant's mother to advocate for his educational needs. Further, although appellant's mother was facing serious health issues, there is no evidence in the record that suggests they affected her ability to make educational decisions for appellant. Moreover, the court's placement order should allow appellant's mother to focus more on appellant's educational needs because it relieved her of the stress involved in supervising appellant on a daily basis. Thus, even if the court did not consider limiting the right of appellant's mother to make educational decisions for him, we find the failure to do so was harmless.

Nor has appellant shown how he was prejudiced by the court's failure to fill out form JV-535. The main impediment to appellant's educational success was his lack of school attendance, which was caused and/or exacerbated by his delinquent behavior, his poor choice of peer associations, and his drug use. The juvenile court clearly was aware of its duty to consider appellant's educational needs and it considered and addressed these needs, stressing the importance of appellant's school attendance, when it made the following order at appellant's disposition hearing:

13

"School rule has changed. And it will be in an attachment. *You're to attend school. Do not have any unexcused absences or tardies.* Maintain passing grades in all graded classes. Comply with all school rules and regulations concerning behavior. Do not leave school during school hours, including the lunch period. And upon high school graduation or G.E.D. you're to continue your education and/or seek and maintain steady employment." (Italics added.)

During the disposition hearing, neither defense counsel nor appellant's mother requested any additional educational orders, testing, or evaluations. Further, the court's disposition order addressed many of the issues it was required to address by rule 5.651(b)(2) including the underlying causes of appellant's poor school performance. Besides specifically addressing appellant's poor school attendance, the court imposed drug, alcohol and gang conditions, and it ordered appellant to participate with his parent or guardian in counseling sessions approved of and as directed by his probation officer. Additionally, a placement form executed by appellant's probation officer on December 11, 2012, indicates appellant's placement would include family counseling, group and individual therapy, and substance abuse treatment. It is clear from the foregoing that the juvenile court adequately considered appellant's educational needs in ordering him into placement and that appellant suffered no prejudice as a result of the court's failure to formalize its educational findings in form JV-535. Accordingly, we reject appellant's ineffective assistance of counsel claim.

## DISPOSITION

The judgment is affirmed.

14