Filed 12/22/15  P. v. Corr CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049408 |
| v. | (Super. Ct. No. 11CF2844) |
| JAMES CHRISTOPHER CORR, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed in part and reversed in part.

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant James Christopher Corr of second degree automobile burglary (Pen. Code, §§ 459, 460, subd. (b); count 1; all statutory citations are to the Penal Code unless noted), first degree residential burglary (§§ 459, 460, subd. (a); count 2), carjacking (§ 215, subd. (a); count 3), first degree robbery (§§ 211, 212.5, subd. (a); count 4), assault with a deadly weapon (§ 245, subd. (a)(1); count 5), kidnapping during a carjacking (§ 209.5; count 6), child endangerment (§ 273a, subd. (a); count 7), leaving the scene of an accident (Veh. Code, § 20001, subd. (a); count 9), vandalism (§ 594, subd. (a), (b)(1); count 10), resisting arrest (§ 148, subd. (a)(1); count 11), kidnapping a child under age 14 (§§ 207, subd. (a), 208, subd. (b); count 12), and kidnapping (§ 207, subd. (a); count 13). The trial court found Corr had served a prison term for a prior conviction within the meaning of section 667.5, subdivision (b).

Corr contends the trial court and the prosecutor misstated the law to the jury concerning kidnapping during a carjacking (count 6), and the trial court erred in failing to instruct the jury it must unanimously agree on the criminal act constituting assault with a deadly weapon (count 5). The Attorney General concedes Corr's kidnapping conviction (count 13) must be reversed because it is a lesser included offense of kidnapping during a carjacking (count 6). We find no basis to overturn the judgment, but we accept the Attorney General's concession and therefore modify the judgment accordingly.

I

FACTUAL AND PROCEDURAL BACKGROUND

On an early morning in October 2011, Elise Howard parked and locked her car in a lot near her Aliso Viejo workplace. When she returned to her car around 9:00 or 10:00 a.m., she discovered someone had broken the passenger side window and stolen items from her purse. A screwdriver was sticking out of the trunk. She phoned the police.

2

Around 7:45 a.m. the same morning, Suzanne Cooper buckled her two-year-old son Colin into his car seat behind the driver's seat of her Volvo parked in her Aliso Viejo garage, and loaded the family's St. Bernard dog into the rear cargo area. Cooper started the engine but ran into the house to get Colin water in his "sippy" cup, leaving the front and rear driver's side doors open, and her phone in the car. She returned to the garage about 30 seconds later and saw a shirtless man with tattoos and a shaved head, who she later identified as Corr, getting into the driver's seat.

Cooper threw the sippy cup at Corr's head and ran toward the opened driver's side door. She managed to reach Corr, but as they touched, she fell to the ground. Colin was crying and calling out "mommy." Cooper stood up and scrambled to her son, but could not unbuckle him. Corr had a "weird look" on his face and Cooper believed he may have under the influence of drugs. She screamed, "give me my baby please. Give me my baby. Take whatever you want. Take my car." Corr did not respond and continued to back the car out of the garage.

As the car door knocked Cooper to the ground, Corr drove in reverse until he slammed into the garage door or wall of Cooper's neighbor. The impact folded back the Volvo's rear door in an open position. Corr sped away as Cooper chased after him, screaming for help. Cooper suffered abrasions and bruising on her elbows and foot.

Candy Lee saw the Volvo screech to a halt at an intersection a few streets away from Cooper's home. Corr got out of the car, and Lee saw the baby in the backseat. Corr attempted to close the Volvo's door but was unsuccessful. He jumped back into the car and continued to drive.

Patricia Vincent heard someone yelling for help. She drove toward the voice and found Cooper crying and saying "please help me." Vincent saw the Volvo driving away, the back door of which remained open. When Corr turned left, Vincent saw Colin in the back seat and she "hit the accelerator." During the pursuit, she could see Corr looking at her in the rear view mirror and pointed a finger at him and honked her

3

horn to get him to stop. They ran a red light as Vincent followed Corr at fairly high speeds for about a mile. Corr pulled over and got out of the car, leaving the engine running and the transmission in drive. He looked at Vincent, and then fled on foot. Vincent phoned 911 and took Colin, who was crying, out of the Volvo and comforted him.

Sheriff's deputies apprehended Corr about a half mile from where he abandoned the Volvo. Investigators located Howard's property strewn along the path of Corr's escape. His DNA and fingerprints were on various items, including pieces of the broken screwdriver protruding from Howard's trunk. Corr admitted Howard's wallet and other stolen items were in his pocket.

Corr testified he was high on methamphetamine and opium pills. He was walking by Howard's car, saw her purse, and decided to steal it. He ran off and was walking through Cooper's neighborhood when he heard a car with its engine running and decided to steal it. Corr got into the car and Cooper came out into the garage and yelled "wait" or "stop." She ran up to the car and threw the cup at him.

Corr claimed he did not know Colin was in the back seat and did not recall hearing Cooper say there was a baby in the backseat, nor did he hear anything from the backseat. Corr accidentally put the car in drive and lunged forward a foot or so before slamming on the brakes. The rear door may have swung open at this point, or Cooper may have reached to open the back door. He then drove in reverse out of the garage, and Cooper fell.

Corr stopped at an intersection to close the rear door, saw Colin in his car seat, and "tripped [] out." He was not "trying to steal somebody else's kid." He saw Vincent behind him honking her horn, and driving through a red light, he decided to pull over and run. Once he saw Colin, he "chose to pull over and . . . stop what [he] was doing because it's not something [he] was okay with." He denied kidnapping or "taking somebody else's kid." He said he "stopped just about as soon as [he] could put a

4

conscious decision together." He admitted he lied to deputies by denying he took the Volvo, and told them "at no time did [he] know anything about any kid being in the back of a Volvo because [he] didn't know anything about a Volvo . . . ."

Following trial in August 2013, a jury convicted Corr as noted above. In October 2013, the trial court imposed an indeterminate prison term of life with the possibility of parole for kidnapping during a carjacking (count 6), a four-year aggravated term for assault with a deadly weapon (count 5), a consecutive eight-month term (one-third midterm) for second degree automobile burglary (count 1), and a concurrent 365-day term for misdemeanor resisting arrest (count 11). The court also imposed a one-year consecutive term for Corr's prior conviction (§ 667.5, subd. (b)). The court imposed and stayed (§ 654) terms for the other convictions.

## II

### DISCUSSION

A. *Kidnapping During a Carjacking*: *No Instructional or Prosecutorial Error*

Corr contends the trial court erred by failing to instruct the jury intent to facilitate a carjacking by kidnapping a victim must be present from the moment the victim is first moved. He relies on an excerpt from *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1365 (*Ortiz*): "The intent that the kidnapping facilitate the carjacking must be present when the original asportation began." Based on this excerpt, Corr asserts the prosecution was required to prove he knew Colin was in the vehicle when he backed Cooper's car out of the garage, "otherwise, he could not have formed the requisite intent at the time of the original asportation."

In a related argument, Corr insists the trial court erred by instructing the jury "[t]he crime of kidnapping for carjacking continues until the perpetrator has actually reached a temporary place of safety." (CALCRIM No. 3261.) Corr claims the instruction erroneously stated the law by suggesting that as an offense that continues after the original asportation, kidnapping for carjacking may arise if the defendant becomes

5

aware of the victim's presence during his or her attempt to escape with the vehicle. (See *People v. Montoya* (1994) 7 Cal.4th 1027, 1047 [trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case].)

Corr similarly faults the prosecutor for arguing the jury did not need "to find that [Corr] knew [the child] was in the car the second he got in it" and Corr was guilty of kidnapping during a carjacking if Corr knew Colin was in the car at any point during his escape. (*People v. Marshall* (1996) 13 Cal.4th 799, 831 [error for prosecutor to misstate the law]; see *People v. Hill* (1998) 17 Cal.4th 800, 823 (*Hill)* [prosecutorial error does not require prosecutor to act with a culpable state of mind].)

We are not persuaded. As we explain, Corr's argument finds no support in the statutory language or corresponding jury instructions, which require a perpetrator to move (i.e., kidnap) the victim with "the intent to facilitate the carjacking or to help himself escape." (§ 209.5 [defining carjacking by kidnapping offense]; CALCRIM No. 1204 [jury instructions for the offense].) Corr's reliance on *Ortiz* is also misplaced.

Section 209.5 defines an aggravated offense in which the potential risk to a carjacking victim is exacerbated by kidnapping the victim. The statute provides in relevant part, "(a) Any person who, during the commission of a carjacking and *in order to facilitate the commission of the carjacking*, *kidnaps another person* who is not a principal in the commission of the carjacking shall be punished by imprisonment in the state prison for life with the possibility of parole. [¶] (b) This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (Italics added.)

The court instructed the jury with a version of CALCRIM 1204, which provided as pertinent here: "To prove that the defendant is guilty of this crime, the

People must prove that: [¶] 1. The defendant committed a carjacking; [¶] 2. During the carjacking, the defendant took, held, or detained another person by using force or by instilling reasonable fear; [¶] 3. The defendant moved the other person or made that person move a substantial distance from the vicinity of the carjacking; [¶] 4. *The defendant moved* or caused *the other person* to move *with the intent to facilitate the carjacking or to help himself escape*; [¶] 5. The person moved was not one of the carjackers; [¶] and 6. The other person did not consent to the movement."

[¶] As used here, substantial distance means more than a slight or trivial distance. The movement must have been more than merely brief and incidental to the commission of the carjacking. The movement must also have substantially increased the risk of physical harm to the person beyond that necessarily present in the carjacking. In deciding whether the movement was sufficient, consider all the circumstances relating to the movement. [¶] Fear, as used in this instruction, means fear of injury to the person or injury to the person's family or property. It also means fear of immediate injury to another present during the incident or to that person's property." (Italics added.)

The prosecutor's argument did not stray from the instruction or the underlying statutory language. The prosecutor argued the jury did not need "to find that [Corr] knew [the child] was in the car the second he got in it." She asserted if Corr knew Colin was in the car at any point during his escape, he was still "kidnapping during the commission of a carjacking." She continued, "to find Mr. Corr guilty of kidnapping during the commission of a carjacking, what you need to find is at some point he transported — at some point while he was committing a carjacking, he transported, he took, held, detained [the child], moved [the child] a substantial distance; [the child] did not consent; and that movement was done with the intent to either facilitate the carjacking or to effect his escape. Meaning, he didn't stop. He didn't let [the child] out. And he didn't get out and give up the car. He continued to keep [the child] and to move [the child] because he was intent on escaping. And he was moving [the child] as part of that.

7

Because to stop would have meant he could no longer escape. And to give up the car meant he could no longer keep the car."

Defense counsel objected that the prosecutor misstated the law by arguing the required intent could be formed after the carjacking was in progress. The court referred the jury to its instructions: "You must follow the law as I explain it to you even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

During deliberations, the jury asked about the instructions pertaining to kidnapping during a carjacking, specifically: "What constitutes 'facilitating a carjacking' in count 6. Does it pertain to the initial taking of the car or allowing the continuation of the taking of the car after Mr. Corr realizes that Colin is in the car?" The court responded, "To the extent you are asking for a definition of facilitating, please refer to CALCRIM 200" providing "'[w]ords and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.'" The court also advised that as to count 6, it was providing a new instruction, CALCRIM No. 3261, which "should now be considered as part of your instruction packet." The instruction provided: "The People must prove beyond a reasonable doubt, all of the elements required in the commission of kidnapping during [a] carjacking pursuant to CALCRIM 1204 . . . . [¶] The crime of kidnapping for carjacking continues until the perpetrator has actually reached a temporary place of safety. The perpetrator has reached a temporary place of safety if he has successfully escaped from the scene, is no longer being chased, and is no longer in continuous physical control of the person kidnapped."

The trial court's initial instruction (CALCRIM No. 1204) accurately stated the law regarding when a carjacker's intent to move a victim qualifies as kidnapping for carjacking, and so did the prosecutor's argument. The only reference in the instruction to intent is in element 4: "The defendant moved the . . . person with the intent to facilitate the carjacking or to help himself escape." (*Ibid.*) The latter part of this language ("to

8

help himself escape") eliminates the possibility that the offense only applies to the initial asportation. This language and the trial court's supplemental instruction that "kidnapping for carjacking continues until the perpetrator has actually reached a temporary place of safety" are both consistent with the longstanding rule that kidnapping is a continuing offense. A kidnapping continues "until such time as the kidnapper releases or otherwise disposes of the victim and has reached a place of temporary safety . . . ." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1159; accord, *People v. Palacios* (2007) 41 Cal.4th 720, 726.) In other words, "as long as the detention continues, the crime continues." (*People v. Masten* (1982) 137 Cal.App.3d 579, 588, disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)

There is no reason a different rule should apply to kidnapping for carjacking. To the contrary, where a carjacker continues to detain a victim, kidnapping for carjacking is a continuing offense. Of course, if the carjacker does not know of a victim's presence in the vehicle at the outset, it is not kidnapping for carjacking at that time. The statutory language states as much by requiring "kidnap[ping]" of a victim, not mere movement of a victim from one place to another. (§ 209.5, subd. (a).) The instruction similarly requires kidnapping of the victim by moving him or her through force or fear "*with the intent to facilitate*" the carjacking. (CALCRIM No. 1204, italics added.) It follows that if the defendant does not know the victim is in the car, he or she cannot have moved the victim with the requisite intent to facilitate the carjacking. The trial court's mistake of fact instructions correctly reinforced this point by informing the jury: "if you find that the defendant believed that no one was inside the Volvo and if you find that belief was reasonable, he did not have the specific intent or mental state required for violating" section 209.5.

But once the defendant learns of the victim's presence in the vehicle, and continues to detain the victim through force or fear in the course of his or her flight, the jury may conclude the defendant has committed kidnapping for carjacking if the jury

9

concludes the defendant's purpose is to "facilitate the commission of the carjacking." (§ 209.5, subd. (a).) True, a defendant completes a carjacking by obtaining dominion and control over the vehicle. (*In re Travis W.* (2003) 107 Cal.App.4th 368, 377.) But the dispossession necessary for carjacking occurs "not only when the perpetrator physically forces the victim out of the vehicle, but also when the victim remains in the car and the defendant exercises dominion and control over the car by force or fear." (*People v. Gray* (1998) 66 Cal.App.4th 973, 985.) In the latter instance, when a victim remains in the car, carjacking is by nature a continuing offense. Accordingly, if the defendant learns of a victim that he or she did not know was present at the outset, but decides to keep and move the victim in the car by force or fear to facilitate the ongoing carjacking, the defendant has committed kidnapping for carjacking at that time. The trial court's instructions and the prosecutor's argument correctly stated the law.

*Ortiz* does not aid Corr. As noted, the court in *Ortiz* stated, "The intent that the kidnapping facilitate the carjacking must be present when the original asportation began." (*Ortiz, supra,* 208 Cal.App.4th at p. 1365.) But the issue in *Ortiz* was not whether kidnapping for carjacking arises solely at the outset of taking a vehicle, as Corr argues, but rather whether kidnapping must be the carjacker's sole or primary asportive intent. In *Ortiz,* the defendants commandeered a car at gunpoint from two victims and drove with them until the police interceded. One of the victims later admitted the kidnapping may have resulted from failing to pay a drug debt. On appeal, the defendants argued the evidence did not support the conclusion they kidnapped the victims to facilitate carjacking; rather, any interest in the victims ceased once the vehicle was obtained as payment of the debt.

*Ortiz* concluded the jury reasonably could infer the defendants kidnapped to facilitate the carjacking based on evidence the defendants kidnapped the victims "for the dual purposes of taking the victims [to hold for ransom] . . . *and* taking the BMW . . . to hold or sell it as partial payment of [the] drug debt." (*Ortiz, supra,* 208 Cal.App.4th at

10

pp. 1365-1366.) *Ortiz* also concluded facilitation of carjacking need not be the sole or primary purpose of the kidnapping under section 209.5. The "offense requires there be *an* intent that the kidnapping facilitate a carjacking, even if there are other concurrent intents for the kidnapping." (*Ortiz*, *supra*, at p. 1366.)

*Ortiz*, in turn, relied on *People v. Laursen* (1972) 8 Cal.3d 192, 198 (*Laursen*), which illustrates the dangers inherent in kidnapping that make kidnapping for carjacking an aggravated offense.

In *Laursen*, the issue was whether the defendant's conduct violated section 209, which proscribes kidnapping to commit a robbery. (*Laursen*, *supra*, 8 Cal.3d at p. 197.) The defendant argued he did not form the intent to kidnap the victim until after the robbery commenced, the kidnapping was merely an afterthought to the robbery, and the asportation of the victim was unrelated to the robbery because it occurred after the robbery was completed. (*Id.* at p. 198.)

*Laursen* noted the Legislature intended to exclude from the aggravated kidnapping statute robberies where the victim's movement did "not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (*Laursen*, *supra*, 8 Cal.3d at p. 198.) "[T]he primary purpose of the statute is to impose harsher criminal sanctions to deter the carrying away of persons during the commission of a robbery in a manner which substantially increases the risk that someone will suffer grave bodily or psychic injury or even death." (*Ibid.*)

The specific intent to rob must be present at the time of the original asportation of the victim. (*People v. Tribble* (1971) 4 Cal.3d 826, 832 [defendant kidnapped woman at an airport, drove her to an isolated place nearby, raped her and subsequently robbed her; jury must determine whether he intended to commit robbery at the time the kidnapping commenced or whether the intent to commit robbery was an afterthought to a sexually motivated kidnapping].) But the aggravated kidnapping statute does not require "the separately defined crimes of robbery and kidnapping be tied

11

together by a coexistence of the elements of intent at the commencement of the criminal transaction; or, to state it in a different fashion, that kidnapping, as well as robbery, must be simultaneously premeditated as a part of a single course of criminal conduct. . . . Since a robbery committed as an afterthought to a kidnapping generally does not substantially increase the risk that someone will be injured or killed such conduct may not be proscribed by the provisions of section 209.  On the other hand, the carrying away of the victim or some other individual during the commission of a robbery, even though motivated by events occurring after the commencement of a robbery still in progress, most certainly increases the risk that he will be injured or killed and is specifically the type of conduct made punishable by section 209.  The soundness of such a conclusion, in the context of the instant circumstances, becomes painfully evident.  Fortuitously snatched as a hostage, [the victim] was, as might reasonably be expected, wounded in the gun battle which occurred during the robbery, notwithstanding the fact that the kidnapping clearly was not premeditated at the commencement of the robbery.  In sum, we are of the view that where a kidnapping is in furtherance of a robbery during which the kidnapping occurs, a violation of section 209 is committed even though the intent to kidnap was formulated after the robbery commenced." (*Laursen*, *supra*, 8 Cal.3d at p. 199.)

These considerations similarly apply here, where Corr's carrying away of Colin after he learned of his presence during the carjacking increased the risk he would be harmed and is specifically the type of conduct punished under section 209.5.  Corr admitted he had the specific intent to steal Cooper's car at the time he carjacked the vehicle from Cooper, and thus when Colin's asportation began.  Accepting as true for present purposes Corr's argument the jury could find he did not know Colin was in the vehicle until he pulled over and attempted to close the Volvo's door, the jury could find the carjacking was ongoing at the point Corr decided to continue driving with knowledge Colin was in the car.  The instructions correctly permitted the jury to find the asportation

12

of Colin was to aid Corr's escape from the scene of the carjacking. The instructions were correct and the prosecutor did not misstate the law. Because we find no instructional or prosecutorial error, Corr's attempt to cumulate both alleged errors under the cumulative error doctrine fails. (*Hill, supra,* 17 Cal.4th at pp. 844-845 [cumulative effect of a series of independently harmless trial errors may give rise to reversible error].)

B.    *Assault With a Deadly Weapon – Unanimity Instruction*

Corr also argues his conviction for aggravated assault (count 5) must be reversed because the trial court failed to provide a unanimity instruction. We disagree.

"Where the accusatory pleading charges a single criminal offense and the evidence shows more than one unlawful act [which may have constituted the offense] was committed, [then] *either* the prosecution must elect the specific act relied upon to prove the charge or the jury must be instructed . . . that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act." (*People v. Martinez* (1988) 197 Cal.App.3d 767, 772; CALCRIM No. 3500.) The trial court must give a unanimity instruction sua sponte where the facts require it. (*People v. Davis* (2005) 36 Cal.4th 510, 561.)

Corr was charged with a single count of aggravated assault. The court instructed the jury he could be guilty if the prosecutor proved he did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person, or that by its nature likely would cause great bodily injury. (CALCRIM No. 875.)

The prosecutor argued: "And what is the deadly weapon that was used in this case? The Volvo. Doesn't have to be a gun. Doesn't have to be a knife. Doesn't have to be a bomb. A car used in a way that Mr. Corr used it in this case becomes a deadly weapon. Person versus car. Car wins. So that's why aggravated assault is charged in this case. And that's why you can find him guilty of aggravated assault. The

13

alternative, that this crime can also be completed even without using the car, you can find that for the incident in the garage where Suzanne Cooper testified she was thrown to the ground. She ended up on the ground as a result of some force because it was the result of the struggle. It wasn't a result of her just skipping along and slipping. Her ending up on the ground was a direct result of a struggle with Mr. Corr from which you can infer some force was applied to her that caused that. She's seven months pregnant and she's being thrown to the ground. The possibility that she could suffer great bodily injury, harm to either her or her fetus, is there, ladies and gentlemen."

A unanimity instruction is not required "'when the acts alleged are so closely connected as to form part of one transaction.'" (*People v. Benavides* (2005) 35 Cal.4th 69, 98.) Here, any act in the garage that caused Cooper to fall the first time and the act immediately after that caused her second fall were part of a continuous transaction as Cooper tried to recover Colin as Corr was stealing the Volvo. The acts occurred at the same time in the same place.

But even assuming the court should have provided a unanimity instruction, any error was harmless under either the state or federal standard. (*People v. Vargas* (2001) 91 Cal.App.4th 506, 562 [applying *Watson* standard]; cf. *People v. Hernandez* (2013) 217 Cal.App.4th 559, 576-577 [applying *Chapman* standard].) Failure to give a unanimity instruction is harmless "if the record indicate[s] the jury resolved the basic credibility dispute against the defendant and would have convicted the defendant of *any* of the various offenses shown by the evidence to have been committed." (*People v. Jones* (1990) 51 Cal.3d 294, 307.) "Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853; *People v. Hernandez, supra,*

14

217 Cal.App.4th at p. 577 [defendant offered same defense to all criminal acts and jury's verdict implies that it did not believe the only defense offered].)

Corr testified Cooper only fell to the ground once, and he asserted he neither struggled with Cooper nor assaulted her with the Volvo, while Cooper maintained their confrontation caused her to fall twice. The jury's verdicts finding Corr guilty of assault, robbery, and carjacking reflect the jury rejected his unitary defense of lack of force. Any error therefore was harmless.

C. *Kidnapping Conviction (Count 13) Must Be Reversed as Lesser Included Offense*

Corr also contends kidnapping (count 13) is a lesser included offense of kidnapping during the commission of carjacking (count 6) and kidnapping a child under the age of 14 (count 12), and he could not be convicted of both offenses. The Attorney General concedes kidnapping is a lesser included offense of kidnapping during a carjacking.

"When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) "Under California law, a lesser offense is necessarily included in a greater offense if . . . the statutory elements of the greater offense . . . include all the elements of the lesser offense, such that the greater offense cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) The offense of kidnapping during a carjacking (§ 209.5) cannot be committed without committing a kidnapping (§ 207, subd. (a)). We agree the conviction must be reversed. There is no need to decide whether kidnapping is also a necessarily included lesser offense of kidnapping a child under age 14.

15

## III

### DISPOSITION

Corr's kidnapping conviction (count 13) is reversed.  In all other respects, the judgment is affirmed.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P.J.


IKOLA, J.